UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JILL J'LYNN SEELY,

                    Petitioner,

v.

ANDREW SAUL, Commissioner of Social
Security Administration,

                    Respondent.

Case No. 4:19-CV-00180-CWD

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is Jill J'lynn Seely's Petition for Review of the Respondent's denial of social security benefits, filed on May 17, 2019. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the ALJ's decision and dismiss the petition.[1]

## PROCEDURAL AND FACTUAL HISTORY

On April 23, 2015, Petitioner filed an application for Title II Disability Insurance Benefits, alleging disability beginning on April 18, 2012. Petitioner's application was denied initially and on reconsideration. A hearing was conducted on January 9, 2018,

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is the named Respondent. 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

before Administrative Law Judge (ALJ) Tanya Dvarishkis. After hearing testimony from Petitioner and vocational expert Kent Granat, the ALJ issued a decision finding Petitioner not disabled on April 24, 2018. Petitioner's request for review by the Appeals Council was denied on March 18, 2019, making the ALJ's decision final. Petitioner filed this action seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g).

Petitioner was 47 years of age at the time of the hearing before the ALJ.[2] She has a high school equivalent education with prior work experience as a cashier, dietary manger, housekeeper, part runner, accounts payable/bookkeeper, waitress, cook, and bartender. (AR 203, 216, 226, 267.) Petitioner was injured in a workplace accident on April 18, 2012, when she slipped on a wet floor and fell on her bottom and right side. (AR 901.) Following the accident, Petitioner reported symptoms of pain, numbness, tingling, limited range of motion, and other conditions. Petitioner underwent two discectomies in 2012, one in July and one in September, and received various other testing and treatments, both before and after the surgeries, to address her complaints. Petitioner was released to return to work in February 2013 but reported having to stop working due to her conditions. (AR 215, 267, 1001, 1003.)[3]

---

[2] At the time of her alleged disability onset date, Petitioner was 41 years of age. Petitioner's age may be relevant in certain circumstances. *See* 20 C.F.R. § 404.1563(c)) (A "younger person" is defined as a person under age 50 in which case age is generally not considered to have a serious affect on the person's ability to adjust to other work. However, in some circumstances, the ALJ will consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. *See* Rule 201.17 in appendix 2.).

[3] The record is somewhat conflicting regarding when Petitioner stopped working. (AR 215, 267, 1630-31.) Petitioner's May 16, 2015 disability report states she stopped working on January 15,

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, April 18, 2012. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner to have the following severe impairments: 1) atrial fibrillation with history of transient ischemic attacks; 2) cervical and lumbar spine degenerative disc disease, status post two lumbar spine surgeries; 3) bilateral carpal tunnel syndrome; 4) neuropathy; 5) migraine headaches; 6) anxiety; and 7) depression. (AR 17.) The ALJ found Petitioner's sleep issues; irritable bowel syndrome; COPD; mini strokes, possible multiple sclerosis, and other neurological conditions; and a knee condition, were all non-severe impairments. (AR 17-18.)

Step three asks whether the claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for any listed impairments. (AR 18.) If the claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner retained the RFC to lift, carry, push, or pull ten

2014. (AR 215.) It appears, however, that Petitioner attempted to return to work later in 2015 for one month at the parts store and in 2016 at the Park Service. (AR 267, 1630-31.)

pounds occasionally and less than ten pounds frequently, and is able to sit eight hours and stand and/or walk just four hours in an 8-hour workday. (AR 19.) She found also that Petitioner is able to frequently use foot/hand controls bilaterally; only occasionally reach overhead; and frequently handle, finger, and feel with the bilateral upper extremities. She is unable to climb ladders, ropes, or scaffolds; and can only occasionally climb ramps or stairs, balance, stoop, kneel crouch, and crawl. Petitioner should have no exposure to greater than moderate noise levels; bright/flickering lights; and unprotected heights, moving mechanical parts, or other workplace hazards. She can have only occasional exposure to humidity/wetness, dust, fumes, odors, gases, and other pulmonary irritants; and only occasional exposure to extreme cold, vibration, and rough or uneven surfaces. Petitioner is limited to understanding, remembering, and carrying out only simple, routine tasks; to making simple work-related decisions; to no more than occasional changes in a routine work setting and job duties; and cannot have high production or pace-type work, though she may have a quota as long as she can control the pace of work. (AR 19-20.)

In making the RFC determination, the ALJ considered all of Petitioner's symptoms, the objective medical evidence, opinion evidence, and other relevant evidence in the record. The ALJ evaluated Petitioner's own statements and found Petitioner's impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 21.) The ALJ discussed the evidence concerning each of Petitioner's

impairments and considered the records and opinions of Petitioner's primary treating physician, Joseph Watson; treating spine surgeon Mark Weight; examining spine specialist, physician Sarah Vlach; treating pain management specialist, physician Barry Beutler; and examining neurologist Stephen Vincent.

The ALJ also reviewed the independent medical evaluation by orthopedic surgeon Richard Knoebel, associated with Petitioner's worker's compensation claim; an assessment by orthopedic surgeon Benjamin Blair, associated with Petitioner's worker's compensation claim; and a consultative examination by physician Ralph Heckard, associated with her disability claim. The ALJ also considered opinion evidence from two State agency non-examining physicians, Robert Vestal and Myung Song, both of whom were given limited weight. (AR 29.)

With regard to Petitioner's mental health allegations, the ALJ evaluated the objective medical records as well as a psychological consultative examination performed by psychologist Jeffrey Elder; references to mental status features in Dr. Heckard's assessment records; and intake records by licensed master social worker Trevor Nelson. (AR 30-31.) The ALJ gave Dr. Elder's opinion only limited weight and Dr. Heckard's opinion just some weight.

The ALJ concluded that the RFC assessment was supported by the objective treatment records, the two State agency consultants' opinions, and Dr. Heckard's physical assessment. (AR 32.) Notably, the ALJ recognized the existence of "numerous reports from various sources of the claimant's extreme presentation that is not supported by or

consistent with the objective medical evidence." (AR 32.)

The ALJ next found Petitioner was unable to perform her past relevant work. (AR 32.) If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience.

Here, the ALJ considered Petitioner's age, education, work experience, the RFC, and the testimony of the vocational expert in concluding jobs exist in significant numbers in the national economy that Petitioner can perform. (AR 33.) Namely, that Petitioner would be able to perform the requirements of sedentary occupations such as: document preparer, copy examiner, and touch-up inspector. (AR 33.) Accordingly, the ALJ found Petitioner not disabled, as defined in the Social Security Act (SSA), from April 18, 2012, through the date of the decision, April 24, 2018.

Petitioner challenges the ALJ's mental RFC determination, arguing the ALJ failed to properly weigh the opinion of Dr. Elder, a consulting, examining physician. Petitioner also contests the constitutionality of the ALJ's appointment.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only where their physical or mental impairments are of such severity that they cannot do their previous work and are also unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## ISSUES PRESENTED[4]

Petitioner raises the following issues as grounds for reversal and remand:

1. Whether the ALJ was constitutionally appointed at the time of the decision in this case.

2. Whether the ALJ properly considered the opinion evidence and whether the RFC determination is supported by substantial evidence.

## DISCUSSION

## 1. Petitioner Forfeited the Appointments Clause Claim

Petitioner argues this case should be remanded to the Commissioner for a new hearing, because the ALJ who issued the unfavorable decision on Petitioner's application was not appointed in accordance with the Appointments Clause of the United States Constitution. Petitioner's argument relies on the United States Supreme Court's decision in *Lucia v. SEC*, 138 S.Ct. 2044 (2018). (Dkt. 18, 20.) The Respondent contends the Petitioner forfeited this claim by failing to raise it at any point during the administrative process. (Dkt. 19.)

### A. Applicable Law

In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission (SEC) are subject to the Appointments Clause in Article II of the United States Constitution and therefore must be appointed by the President, a court of law, or a head of department. *Id*. at 2055 (concluding the SEC's practice of using staff to select and hire ALJs was unconstitutional). The remedy for "'one who makes a timely challenge

---

[4] The Court addresses the Appointments Clause issue first to resolve the question of the ALJ's authority to decide Petitioner's claim.

**MEMORANDUM DECISION AND ORDER - 8**

to the constitutional validity of the appointment of an officer who adjudicates his [or her] case,'" is a new hearing before an ALJ who was constitutionally appointed. *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)).

Although the Ninth Circuit has not addressed whether *Lucia* applies in the context of SSA ALJs, it appears likely that it does. *See* Exec. Order No. 13843, 83 Fed. Reg. 32755 (July 13, 2018) (Executive order issued in response to *Lucia* concluded that "at least some - and perhaps all - ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause."). On July 16, 2018, the Acting Commissioner of Social Security ratified the appointment of SSA ALJs and approved their appointments as her own. The SSA also issued Social Security Ruling (SSR) 19-lp, effective March 15, 2019, to provide guidance for challenges to a SSA ALJ's authority. This Court, however, need not decide whether *Lucia* applies to SSA ALJs because, as discussed below, the Petitioner here forfeited the claim by not raising the validity of the ALJ's appointment at the administrative level.

"Appointments Clause challenges are nonjurisdictional and may be waived or forfeited." *Dierker v. Berryhill*, No. 18-cv-145-CAB(MSB), 2019 WL 246429, at *3 (S.D. Cal. Jan. 16, 2019) (quoting *Turner Bros., Inc. v. Conley*, 757 Fed. Appx. 697, 700 (10th Cir. 2018) (citing *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991); *Jones Bros., Inc. v. Sec. of Labor*, 898 F.3d 669, 678 (6th Cir. 2018) (stating that Appointments Clause challenges are "not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture.")).

A claimant "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Although the Supreme Court has recognized that claimants need not "exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues," that decision did not address the question of "[w]hether a claimant must exhaust issues before the ALJ." *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000). In the Ninth Circuit, *Meanel* "remains binding on this court with respect to proceedings before an ALJ." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

Moreover, courts in the Ninth Circuit who have addressed Appointments Clause challenges to SSA ALJs "have held that if a claimant does not present an issue during administrative proceedings, the issue is forfeited for purposes of federal court review." *Dierker*, 2019 WL 246429, at *3 (citing *Samuel F. v. Berryhill*, Case No. CV 17-7068-JPR, 2018 WL 5984187, at *2 n.6 (C.D. Cal. Nov. 14, 2018) ("To the extent *Lucia* applies to [SSA] ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."); *Salmeron v. Berryhill*, Case No. CV 17-3927-JPR, 2018 WL 4998107, at *3 n.5 (C.D. Cal. Oct. 15, 2018) (same); *Harshaw v. Colvin*, No. 1:12–CV–01776–BAM, 2014 WL 972269, at *4 (E.D. Cal. Mar. 12, 2014) ("a complete failure to raise an issue during administrative proceedings" is not excused)).

Further, the Supreme Court expressly found in *Lucia* that an Appointments Clause challenge must be timely. *Lucia*, 138 S.Ct. at 2055. The challenge in *Lucia* was found timely, because the petitioner "contested the validity of [the ALJ's] appointment before

the Commission." *Id.* To the extent *Lucia* applies to social security cases, timeliness is plainly a requirement.

Based on the foregoing, the Court agrees with and follows the reasoning of the other district courts in the Ninth Circuit and the Ninth Circuit's existing law, in concluding that an Appointment's Clause challenge raised for the first time on appeal to the district court is not timely. *See Shaibi*, 883 F.3d at 1109; *Meanel*, 172 F.3d at 1115.

### B.    Analysis

Here, Petitioner did not raise the Appointments Clause challenge during administrative proceedings before either the ALJ or the Appeals Council, and has raised it now for the first time to this Court. Petitioner's failure to timely raise the Appointments Clause challenge forfeits the claim. *See Luther v. Berryhill*, No. 17-cv-06479-RMI, 2019 WL 1367524, at *5 (N.D. Cal. March 26, 2019) (citing cases). Petitioner maintains the issue was timely raised at the earliest opportunity and is not precluded by any issue exhaustion requirement or efficiency concerns. (Dkt. 18, 19.) The Court disagrees.

This civil action is not Petitioner's first opportunity to raise her Appointments Clause claim. *See Younger v. Comm'r*, No. CV-18-02975-PHX-MHB, 2020 WL 57814, at *5 (D.AZ Jan. 6, 2020). Despite the fact that the *Lucia* case was decided after the ALJ issued her decision, Petitioner's Appointment's Clause claim existed and could have been raised to the ALJ. *Id.* at *5 n. 3. "Various SSA regulations allowed for [Petitioner] to raise her claim and contemplate constitutional claims…[This] is simply [Petitioner's] first opportunity to use *Lucia* to bolster her argument." *Id.* (citing 20 C.F.R. §§ 404.924,

404.939, 404.946(b), and 404.950).

Petitioner also could have raised this challenge to the Appeals Council. *Lucia* was decided on June 21, 2018, before Petitioner filed her request for review dated June 28, 2018, and prior to the Appeals Council issuing its denial of Petitioner's request for review on March 18, 2019. (AR 3, 165.) Moreover, the Commissioner reappointed the ALJ on July 16, 2018 in response to the *Lucia* decision, and SSR 19-1p, addressing *Lucia* challenges made to the Appeals Council, went into effect on March 15, 2019, both of which occurred prior to the denial of Petitioner's request for review.

For these reasons, the Court concludes Petitioner's Appointment Clause claim is untimely and, therefore, forfeited. Petitioner is not entitled to additional review under SSR 19-1p, because she did not timely raise the Appointment Clause challenge to the Appeals Council. *See* SSR 19-1p. The petition will be dismissed on this issue.

## 2. The ALJ Properly Weighed the Opinion Evidence and the Mental RFC is Supported by Substantial Evidence

Petitioner argues the ALJ erred in assigning little weight to the opinion of the consulting, examining psychologist, Dr. Elder, resulting in a mental RFC determination that is not supported by substantial evidence. For the reasons stated below, the Court finds the ALJ appropriately discussed the record and weighed Dr. Elder's opinion, with one exception, and that the RFC determination is supported by substantial evidence.

### A. Standards for the RFC Determination and Opinion Evidence

Residual functional capacity (RFC) is the most a person can do, despite their

physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The determination of a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence," including medical opinion evidence, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). The ALJ is "responsible for translating and incorporating medical findings into a succinct" RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

In making the RFC determination, an ALJ is required to evaluate every medical opinion in the record and assign a weight to each. 20 C.F.R. § 404.1527(c). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

In evaluating a medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.[5] An ALJ errs, by rejecting "a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13.

### B.   Dr. Elder's Opinion

Dr. Elder, an examining psychologist, conducted a mental status evaluation of Petitioner on September 2, 2015. (AR 1228-1232.)[6] Dr. Elder diagnosed Petitioner with major depressive disorder, recurrent, moderate; posttraumatic stress disorder; and borderline personality disorder, traits. (AR 1232.) Dr. Elder opined that Petitioner:

> [W]ould be unable to regularly complete some work related mental activities. Demonstrated levels of understanding and comprehension are generally adequate. Social awareness and ability to interact appropriately in social situations is a relative weakness. She has a hard time getting along with supervisors and co-workers on a consistent basis. Short term memory is somewhat impaired and her ability to sustain concentration, and persist when challenged are marginal. Her ability to adapt to new situations and take on new assignments may often be beyond her capacity, because of

---

[5] The opinion evidence is evaluated pursuant to 20 C.F.R. § 404.1527 where, as here, Petitioner's claim was filed before March 27, 2017.

[6] Psychologists, such as Dr. Elder, are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

anxiety related issues. Despite this, her primary limitation may be her physical impairments, which appear to be intensifying.

(AR 1232.)

The ALJ assigned limited weight to Dr. Elder's assessment, stating "the record as a whole does not support the level of impairment opined by Dr. Elder." (AR 31.) Specifically, the ALJ pointed out that Dr. Elder's evaluation was a "one-time examination" that "relied considerably" on Petitioner's overstated subjective reports and that the medical record contradicted Dr. Elder's opinion. (AR 30-31.)

Petitioner contends the ALJ erred in discrediting Dr. Elder's opinion based on it being a one-time examination, failed to explain her conclusion that Dr. Elder relied on Plaintiff's subjective complaints, failed to discuss the objective mental exam findings in Dr. Elder's report and other evidence in the record supporting Dr. Elder's opinion; and made improper assumptions regarding Petitioner's substance abuse. (Dkt. 18, 20.) The Court finds as follows.

### 1.    The ALJ Appropriately Weighed Dr. Elder's Opinion

The ALJ articulated specific and legitimate reasons supported by substantial evidence for discrediting Dr. Elder's opinion. *Reddick*, 157 F.3d at 725 (ALJ must give specific and legitimate reasons for rejecting the contradicted opinion of an examining physician); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (An ALJ's decision to not rely on an opinion is appropriate when supported by substantial evidence in the record.). Namely, that Dr. Elder's opinion relied considerably on Petitioner's subjective

reports, which were overstated and unsupported by the objective treatment records, and was inconsistent with other evidence in the record. (AR 30-31.)

The ALJ's decision accurately reviewed the medical records and properly considered Dr. Elder's report, setting forth his diagnoses, findings, and opinion. (AR 30-31.) Contrary to Petitioner's contention, the ALJ did not err in characterizing Dr. Elder's evaluation as a "one-time examination," as that is both an accurate and relevant consideration of two regulatory factors: 1) the length of treatment and frequency of examination and 2) the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c). The ALJ adequately addressed the remaining regulatory factors in her discussion of Dr. Elder's report and review of the record by recognizing Dr. Elder's specialization as a psychological consultative examiner but pointing out that Dr. Elder's findings lack supportability and consistency given the other evidence in the record. 20 C.F.R. § 404.1527(c); *Kovach v. Berryhill*, Case No. 18cv1848-GPC(MSB), 2019 WL 2995824, at *12 (S.D. Cal. July 9, 2019) (ALJ is required to show consideration of all the regulatory factors, but need not undertake a "full-blown written analysis" of each and every factor.).

As to supportability, the ALJ concluded that Dr. Elder relied considerably on Petitioner's overstated subjective reports. That conclusion is sufficiently explained in the ALJ's discussion of Dr. Elder's findings and supported by substantial evidence. (AR 30-31.) Dr. Elder's findings are unmistakably based in large part on his interview with Petitioner. (AR 1228-1232.) At the outset of the report, Dr. Elder noted the lack of mental

health records and that Petitioner was the "sole informant during the interview" and "considered a reliable historian." (AR 1228.) The unreliability of Petitioner's symptom statements, however, is discussed at length throughout the ALJ's decision, which identifies several treating and examining sources in the record that reported Petitioner's symptom complaints were overstated, unsupported, and inconsistent with the objective medical findings. (AR 21-32.) Petitioner does not challenge the ALJ's findings concerning Petitioner's symptom reports. The Court finds the ALJ's conclusion that Dr. Elder relied considerably on Petitioner's symptom statements is sufficiently explained and that the ALJ did not err in relying on that conclusion as a basis for discrediting Dr. Elder's opinion.

Further, the ALJ's decision pointed out specific and legitimate inconsistencies between Dr. Elder's opinion and the record. Namely, that Petitioner was not in counseling and had been on the same anti-depressant for over a year, which the ALJ reasonably concluded suggested adequate control of her mental health symptoms. (AR 30.) Following Dr. Elder's evaluation, the records show improvement of Petitioner's mental health symptoms, further indicating Petitioner's mental impairments were not as limited as Dr. Elder concluded. (AR 31.) The ALJ also noted that Dr. Elder reviewed no mental health records besides one document describing depressive symptoms. (AR 30.) The ALJ pointed out, however, that other documents in the record showed Petitioner's mental health complaints and associated treatment generally coincided with and were attributable to periods of time when Petitioner was experiencing increased psychosocial

stressors. (AR 30.)

While Petitioner disagrees with the ALJ's characterization of the evidence and points to other portions of the record that she argues show objective findings of impaired mental status, the Court finds the ALJ identified specific and legitimate reasons for discrediting Dr. Elder's opinion that are supported by substantial evidence. That Petitioner draws different conclusions from the record and would emphasize different portions of the record and of Dr. Elder's opinion, does not warrant reversal or remand. *Reddick*, 157 F.3d at 720-21 (The ALJ is charged with resolving conflicts in the evidence and the ALJ's findings must be upheld if supported by substantial evidence.); *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (When evidence supports more than one rational interpretation, courts defer to the Commissioner's decision); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (An ALJ's decision based on a rational interpretation of conflicting evidence must be upheld.). For these reasons, the Court will affirm the ALJ's decision.

### 2.    The ALJ's Assumption Was Harmless Error

The ALJ erred, however, by making an improper assumption questioning the truthfulness of Petitioner's statements to Dr. Elder regarding her substance abuse. In discussing Dr. Elder's opinion, the ALJ stated "[i]t is also not clear the truthfulness of [Petitioner's] reports about substance abuse, given her hospitalization approximately one year later which noted the methamphetamine use." (AR 31.)

The assumption drawn by the ALJ regarding Petitioner's lack of candor about her

**MEMORANDUM DECISION AND ORDER - 18**

substance abuse to Dr. Elder is speculative and unsupported by the record. (AR 1400-1408.) The fact that Petitioner was hospitalized and tested positive for methamphetamine approximately a year following Dr. Elder's exam, does not establish that Petitioner was untruthful in her statements to Dr. Elder or abusing substances at the time of Dr. Elder's exam. The record in fact shows just the opposite.

Dr. Elder was aware that Petitioner had a history of substance abuse. (AR 1230-1231.) Dr. Elder's report states Petitioner "reported an extensive history of substance abuse" but that she had stopped using drugs at age 24 and had not used them since. (AR 1230.) When asked about prescription drug abuse, Petitioner admitted to Dr. Elder that she recently had sought out additional drugs from illegal sources but denied any abuse for the past year or so. Armed with that knowledge and background of Petitioner's history, Dr. Elder concluded there was "no evidence of any substance induced altered mental state during the exam." (AR 1231.)

The ALJ therefore erred in suggesting Petitioner may have been untruthful about her substance abuse to Dr. Elder. That error, however, was harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) and *Alaska Dept. of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)).

Here, the ALJ's erroneous assumption regarding Petitioner's substance abuse

statements was inconsequential to the ultimate nondisability determination. As discussed above, the ALJ identified other specific and legitimate reasons for assigning limited weight to Dr. Elder's report that are supported by substantial evidence sufficient to affirm the ALJ's decision. Namely, that Dr. Elder's evaluation was inconsistent with other medical evidence in the record and relied considerably on Petitioner's unsupported symptom statements. For those reasons, the Court finds the ALJ appropriately weighed Dr. Elder's opinion despite the incorrect assumption.

### C.   The Mental RFC is Supported by Substantial Evidence

The ALJ properly evaluated the record and formulated a mental RFC with limitations that were supported by substantial evidence. In making the RFC finding, the ALJ considered all of Petitioner's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; and opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527. (AR 20.)

The ALJ accurately examined the medical records relating to Petitioner's mental impairments of depression and anxiety as well as Petitioner's symptom statements. (AR 18-19, 30-32.) At steps two and three, the ALJ found Petitioner had moderate limitation in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintain pace, but no more than mild limitation in the areas of interacting with others and adapting or managing oneself. (AR 19.)

The RFC assessment includes limitations that adequately capture the degree of

Petitioner's mental impairments found at steps two and three. Specifically, that Petitioner should have no exposure to noise, bright/flickering lights, is "limited to understanding, remembering, and carrying out only simple, routine tasks, to making simple work-related decisions, to no more than occasional changes in a routine work setting and job duties, and cannot have high production or pace-type work, though she may have a quota as long as she can control the pace of work." (AR 19-20.) These limitations are supported by substantial evidence in the record for the reasons explained in the ALJ's decision.

As discussed above, the ALJ did not err in rejecting the level of mental impairment limitations opined by Dr. Elder. The record contains only sporadic mental health complaints often coinciding to times when Petitioner experienced increased psychosocial stressors. (AR 30.) During those time periods, Petitioner sought treatment of her increased depression and anxiety from her primary care provider, as opposed to a mental health specialist. The medical evidence shows Petitioner's mental health symptoms improved and were adequately controlled by the treatment received. (AR 32.) Further, Petitioner's subjective reports of her mental health symptoms were overstated and unsupported by the objective treatment records. For these reasons, the Court finds the ALJ's assessment of Petitioner's RFC is supported by substantial evidence.

### D. Conclusion

Viewing the record as a whole, the Court finds the ALJ appropriately weighed and considered the medical evidence in the record, specifically the opinion of Dr. Elder, and that substantial evidence supports the mental RFC assessment. *Orn*, 495 F.3d at 630;

*Batson*, 359 F.3d at 1194. For these reasons, the ALJ's decision will be affirmed and the petition will be dismissed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

DATED: September 16, 2020



_____

Honorable Candy W. Dale
United States Magistrate Judge